## J. R. THOMAS v. SAM BRIN.

### Decided February 1, 1905.

**1.—Lease—Warranty of Possession.**

A covenant in writing, in a lease of land, for the possession of premises by the lessee construed as being no more than the covenant, which would be implied in the absence of such provision, that the lessee should not be disturbed by the lessor or any person claiming under or by title paramount to his, and as not warranting against the act of strangers.

**2.—Written Contract.**

A contract in writing can not be varied nor added to by a contemporaneous verbal agreement in the absence of fraud or mutual mistake.

**3.—Lease—Possession—Case Distinguished.**

The implied covenant in a lease that there shall be no impediment to the lessee's obtaining possession at the time stipulated, does not apply to a case in which the lessee had taken possession and was afterwards evicted by a third party. Hertzberg v. Beisenbach, 64 Texas, 264, distinguished.

Appeal from the District Court of Brown County. Tried below before Hon. John W. Goodwin.

*E. C. Harrell,* for appellant.—Under the rule that "every reasonable intendment must be indulged in favor of the petition, the demurrer being general," the appellant's original petition and trial amendment—both of which are now here referred to, and made a part hereof—show a good cause of action against the appellee, Sam Brin. McFarland v. Owens, 64 S. W. Rep., 229; Rogers v. McGuffey, 7 Texas Ct. Rep., 564; and cases there cited; Rogers v. McGuffey, 8 Texas Ct. Rep., 164; McFarland v. Owens, 63 S. W. Rep., 530.

If appellant had leased the premises in controversy from the appellee without an express covenant for quiet enjoyment, while a covenant for quiet enjoyment would have been implied in the lease, yet such implied covenant would not have extended to, and would not have been broken by, the tortious eviction of appellant by Anderson; but inasmuch as the appellee gave the appellant an express warranty against such tortious eviction by said Anderson, it follows that the appellee is liable for such tortious eviction, and therefore appellant's petition and trial amendment show a good cause of action against the appellee, and his (appellee's) general demurrer should have been overruled by the court below. 8 Am. and Eng. Ency. of Law (2d ed.), 102; 18 Am. and Eng. Ency. of Law (2d ed.), 625, 626, and authorities cited in note 1, on said page 626.

In order to ascertain the relation of the words of a document to facts, extrinsic evidence may be given of any fact to which it refers, or may probably have been intended to refer, or which identifies any person or thing mentioned in it; and whatever be the nature of the document under review, the object is to discover the intention of the parties as evidenced by the words they have used; and in order to do this the court must put itself in the place of the parties to the document or contract, and then see how the terms of the instrument affect the subject-matter of the contract, and therefore appellant had the right to show, by extrinsic or parol evidence, that appellee agreed to "indemnify" him against his anticipated tortious eviction by Anderson, and it follows that the appellant's petition and trial amendment allege a good cause of action against the appellee, and that his (appellee's) general demurrer thereto should have been overruled by the court below. 17 Am. and Eng. Ency. of Law (1st ed.), 452, and cases cited in note 2, on same page; Cavazos v. Trezino, 6 Wall. (U. S.), 773, Law Ed., vol. 18, p. 815; Good v. Matin, Law Ed. (U. S.), vol. 24, p. 343; Bumpass v. Morrison, 70 Texas, 756, 8 S. W. Rep., 596; Hammond v. Martin, 15 Texas Civ. App., 570, 40 S. W. Rep., 348.

*T. C. Wilkinson,* for appellee.—The plaintiff's petition failed to show any cause of action against the defendant not only in the fact that it showed ouster, if any, by a third person and stranger, after the beginning of the term and after plaintiff had entered into possession, but in the further material fact that it contained no allegation that such eviction was by paramount title. 8 Am. and Eng. Ency. of Law (2d ed.), pp. 101, 102; Chestnut v. Tyson, 53 Am. St. Rep., 101-113, and note.

The fact that the covenant for quiet enjoyment in the lease in this case is express and not implied is immaterial unless the express terms are broader than the terms that the law will imply. In other words, the fact that said covenant is express does not make the lessor liable for the tortious acts of third parties unless such express covenant so provides. Moore v. Weber, 10 Am. St. Rep., 708; Chestnut v. Tyson, 53 Am. St. Rep., 101-113, and note.

Parol evidence is inadmissible to enlarge the covenant contained in a lease. In other words, if the express covenant would make the covenantor liable only for his own acts and for eviction by paramount

title, parol evidence is inadmissible to show an agreement or understanding that he was also to be liable for the tortious disturbances of third persons. 8 Am. and Eng. Ency. of Law (2d ed.), pp. 199-202.

EIDSON, ASSOCIATE JUSTICE.—This suit was brought by J. R. Thomas, appellant, against Sam Brin, appellee, to recover damages for the alleged breach of a contract or lease in writing, entered into by and between the appellant and the appellee, by which the appellee rented or leased to the appellant a farm situated in Brown County, for the year 1903.

Appellee in the court below filed and presented a general demurrer to the plaintiff's original petition and trial amendment, which was sustained, and the cause dismissed, the sole question presented for our determination. being whether this action of the court was error. Appellant's petition and trial amendment, omitting formal parts, are as follows:

"That on the 11th day of November, 1902, plaintiff and defendant entered into a certain lease or contract, of that date, in writing, under the hands of said parties, which said lease or contract is, substantially, as follows, to wit:

" 'State of Texas, County of Brown.

" 'This memorandum witnesseth: That I, Sam Brin, have this day and do hereby lease to J. R. Thomas for the crop year of 1903, the 216½ acres of land out of the William Guyman survey in Brown County, Texas, which 216½ acres were acquired by Leon Brin by foreclosure of mortgage against W. C. Anderson in favor of said Leon Brin in the District Court of Brown County, Texas. It is agreed that the land in cultivation out of said 216½ acres shall be planted in grain and cotton, and that not exceeding 15 acres shall be planted in grain and the balance in cotton.

" 'The said J. R. Thomas is to pay as rent one-third of all grain and one-fourth of all cotton raised on said land, which rental is to be delivered to said Sam Brin in Brownwood, Texas.

" 'The said J. R. Thomas is to have the exclusive possession and use of the balance of said 216½ acres free of rent, but he hereby agrees to prevent all parties from cutting or removing timber or wood therefrom, so far as he possibly can; and also agrees that in case said 216½ acres are severed by the said Sam Brin by a fence erected between same and certain lands belonging to W. C. Anderson lying within the same enclosure, that he will also, as far as he is able, keep all trespassers off said 216½ acres.

" 'The said J. R. Thomas hereby further agrees that in the event he can, by the use of reasonable diligence, gather his crop before the end of the year 1903, that he will as same are gathered, give immediate possession to the said Sam Brin of said premises, if demanded.

" 'The said Sam Brin hereby warrants to the said J. R. Thomas the use and possession of said lands this (that) is in cultivation during the time above mentioned, and agrees to indemnify him in the event he is deprived of the use and possession of same; but does not make said warranty as to the balance of said land.

" 'Witness our hands at Brownwood, Texas, this the 11th day of November, 1902.

" '(Signed) Sam Brin,<br>" 'J. R. Thomas.

" 'Witness: J. E. Wright.'

"That in and by said lease and contract, defendant covenanted with this plaintiff that he should peaceably and quietly occupy, cultivate and enjoy the premises described in the above mentioned lease and contract, and especially that portion of said premises which was then and is there in cultivation, for the full term mentioned in said lease. But plaintiff alleges that he has not been permitted peaceably to occupy and enjoy the possession of said premises, or any part thereof, for any period whatever; but on the contrary, after the commencement of the said term, and on or about the first day of December, 1902, one W. C. Anderson, claiming to have some kind of title to, or interest in said premises, entered upon the same and evicted the plaintiff therefrom, and has since kept plaintiff out of possession of said premises.

"Plaintiff further alleges that, relying upon the covenant and agreement of defendant above mentioned he (plaintiff) promptly made all of the necessary, usual and customary arrangements for the enjoyment, occupation and cultivation of said premises, by then and there supplying himself with the necessary teams, tools and farming implements and provisions for himself and his family, and feed for his said teams, all of which arrangements and preparations were then and there well known to defendant and said W. C. Anderson; that said W. C. Anderson on or about the first day of December, 1902, for the purpose and with the intention of preventing plaintiff from occupying and cultivating said premises, under and in pursuance of said lease and contract, entered upon said premises as aforesaid, and evicted the plaintiff therefrom by force, threats and violence; that the plaintiff immediately informed the defendant that he had been so evicted as aforesaid and requested defendant to put him in possession of the same; that the defendant then and there repeatedly promised and assured plaintiff that he (defendant) would make his said covenant and warranty good, by restraining said W. C. Anderson by a writ of injunction, from in any manner interfering with said premises; but that the defendant wholly failed, neglected and refused to so restrain said W. C. Anderson, and finally informed the plaintiff that he would make no effort whatever to prevent or restrain said W. C. Anderson from interfering with said premises.

"Plaintiff further alleges that immediately after he became aware that he would not be permitted to occupy and cultivate said premises, or any part thereof, under said lease, he (plaintiff) made an effort, in good faith, to rent other land, to occupy and cultivate, but that it was then impossible to rent or secure land for that purpose in said Brown County, for the reason that all of the desirable tillable land in that county had been already rented or leased to other tenants.

"Plaintiff further alleges that said lands so leased by him was a suitable home for plaintiff and his family for the year 1903, having a dwelling house, water and other customary comforts for a home for a

tenant farmer and his family thereon, and the land in cultivation being of good quality, and in good state of cultivation.

"That plaintiff being a farmer by avocation, with a family, and owning no land and having no other land rented for the year 1903, made the said contract specially valuable to him; that relying upon his right under said contract to have actual possession of said land on or about the 1st day of December, 1902, plaintiff did not seek elsewhere to rent other premises for a home for himself and family for the year 1903, until he received notice that defendant had breached his contract, as aforesaid, and that it was then too late for him to rent any other similar or suitable place for the year 1903, on similar terms or on any reasonable terms; and plaintiff being a man of very limited means was then and there unable to buy a home for himself and his family; and that all of said facts were well known to defendant when he made said contract and breached the same, as aforesaid.

"Plaintiff further alleges that by reason of the breach of said contract by defendant, as aforesaid, plaintiff has been deprived of said contract and lease, which was of the value of $600 and of that value to him, and that therefore defendant has become liable to plaintiff for damages in the sum of $600.

"That by reason of said breach plaintiff, in order to procure a home for himself and family for the year 1903, and remove his family thereto, was compelled to expend time and labor in securing such home and removing thereto, to wit:   31 days during which time plaintiff's labor or time was reasonably worth $2 per day, or the aggregate sum of $62; that plaintiff by reason of the breach of said contract by the defendant, as aforesaid, was compelled to sell and dispose of his corn and oats, which he had on hand on said premises at the time of such breach and to buy another supply of corn and oats at the place to which he was compelled to remove, by reason of said breach, for which new supply of corn and oats, plaintiff was compelled to pay the sum of $15 more than he was able to obtain for the corn and oats that he was compelled to sell and dispose of, as aforesaid, whereby plaintiff has sustained special damages, including said sum of $62, in the aggregate sum of $77.

"That at the time of the making of said contract, and at the time that the same was breached by the defendant, as aforesaid, it was or should have been contemplated by defendant that such breach would deprive plaintiff of a home, and tillable land of the advantages and qualities of that leased by the plaintiff, as aforesaid, and necessitate great trouble and expense on the part of plaintiff in procuring other land to cultivate for the year 1903, and greatly damage him on account of his said avocation, circumstances and limited means, and because all the desirable places were rented out for that year (1903) the date of the breach of said contract; whereby defendant is liable to plaintiff as aforesaid.

"Plaintiff further alleges that he made a valid contract with defendant, as above stated, and defendant breached same in manner and date above stated, and that the facts above alleged were known to and contemplated by defendant when he made said contract and breached it. That the effect of said contract was that plaintiff should occupy the

land so rented during the said leased period, cultivate it in said crops and gather same at his own expense, that is, plaintiff would perform or supply all labor, seed, teams, feed, tools, etc.; and for the use of said land and advantages derived from the undertaking, defendant was to have one-third of all grain and one-fourth of all cotton raised on said land during the year 1903, which rental was to be delivered to defendant in Brownwood, Texas.

"That such contract, under the law, was not assignable by plaintiff without the consent of defendant. That when said contract was made and when the same was breached, as aforesaid, it was contemplated by plaintiff and defendant that, in the event of the year 1903 being an average good crop year, plaintiff would profit, realize and gain as much as $600; that is, his two-thirds of said grain and three-fourths of said cotton would exceed in value the sum of $600 more than the sum or amount of cost of planting, cultivating and gathering same, including all labor, use of tools, teams, feed, seed, etc.

"That it was a consideration of said contract that plaintiff should have the advantages aforesaid to be derived therefrom—that is that he should receive as benefits accruing to him the value of his part of said crops, less the cost of production; and as a direct result of defendant's breach, plaintiff has been deprived thereof, to his damage $600 in addition to the special damages aforesaid. That had defendant complied with the said contract, and permitted and enabled the plaintiff to take actual possession of and cultivate said premises for the year 1903, under and pursuance of said contract, the cotton and corn which plaintiff would and could have grown and gathered during that year from said leased premises, would have been of such value as his said part would have been in value as much as $600 over the cost of producing and gathering said crops, in addition to the special damages aforesaid.

"Wherefore, plaintiff prays that defendant be cited to answer this petition, and that he have judgment against the defendant for his said damages, interest, costs of suit and for general relief."

Appellant's trial amendment is as follows:

"1st.  Plaintiff alleges that the warranty and guaranty contained in the lease or contract sued on herein, was given by defendant and demanded and accepted by plaintiff, for the purpose of protecting plaintiff against anticipated interference from one W. C. Anderson with the quiet and peaceable enjoyment of the premises in controversy; that such acts of interference on the part of said W. C. Anderson were within the contemplation of both plaintiff and defendant, before, at the time of and after the execution of the lease or contract herein sued on; and that plaintiff would not have entered into said contract at all, if defendant had not given to plaintiff such warranty and guaranty.

"Plaintiff further alleges that the fact that such warranty and guaranty was not more fully and certainly set out in said contract as to such interference is due to inadvertence and mistake, and this the plaintiff is ready to verify.  Wherefore, plaintiff now here repeats the prayer of his original petition."

In order to determine whether or not the above quoted pleadings of appellant set up a good cause of action as against a general demurrer,

it becomes necessary for us to determine the construction to be placed upon, or the effect to be given, the following provision of the lease contract: "The said Sam Brin hereby warrants to the said J. R. Thomas the use and possession of said land that is in cultivation during the time above mentioned, and agrees to indemnify him in the event he is deprived of the use and possession of same."

We construe the provision of the lease above quoted to express merely the covenant on the part of the lessor which would have been implied in the absence of such provision. In other words, that such provision simply constitutes a covenant on the part of the lessor that the lessee shall have the quiet enjoyment and possession of the land during the term of the lease; and which covenant means that the lessee (appellant herein) shall not be evicted or disturbed by the lessor (appellee) or by persons deriving title from him, or by virtue of a title paramount to his, but expresses or implies no warranty against the acts of strangers. (1 Taylor, Landlord and Tenant, secs. 304, 305; Sedberry v. Verplanck, 31 S. W. Rep., 242.)

Appellant's original petition contains the following allegation: "But plaintiff alleges that he has not been permitted peaceably to occupy and enjoy the possession of said premises or any part thereof for any period whatever; but, on the contrary, after the commencement of the said term, and on or about the first day of December, 1902, one W. C. Anderson, claiming to have some kind of title to or interest in said premises, entered upon the same and evicted the plaintiff therefrom, and has since kept plaintiff out of possession of said premises." The allegations of appellant's trial amendment can not be considered as aiding the allegations in his original petition. The written contract pleaded in the general petition could not be varied or added to by a contemporaneous verbal agreement, not included therein, in the absence of fraud or mutual mistake in embracing such verbal agreement in the writing, and there is no allegation of such fraud or mutual mistake in the trial amendment.

Hence we conclude that it appears from appellant's petition and trial amendment, that he is seeking to recover of appellee damages by virtue of the covenant above quoted on account of being evicted from the rented premises by a stranger who is not alleged to have a paramount title to appellee to the rented premises. The general demurrer of appellee to his pleadings was properly sustained. The doctrine laid down in Hertzberg v. Beisenbach, 64 Texas, 264, to the effect that when premises are leased, with possession to be delivered at a future day, the lessor impliedly covenants that there shall be no impediment to the lessee's obtaining possession at the time stipulated; but such implied covenant does not extend to any period beyond the day when possession is to be delivered, does not apply to this case, as appellant's petition does not allege that there was any impediment in the way of his taking possession of the leased premises at the time stipulated. But it is a reasonable inference from the allegations in his petition that he had taken possession of the premises and was afterwards evicted by Anderson.

Finding no error in the record, the judgment of the court below is affirmed.                                                      *Affirmed.*